UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -:
UZZOL SIDDIKY and KAWSAR A. MARUF, :
on behalf of themselves and on      :
behalf of other similarly-situated  :
individuals,                        :
                                    :
            Plaintiffs,             :
                                    :
    - against -                     :
                                    :
UNION SQUARE HOSPITALITY GROUP,     :
LLC, GRAMERCY TAVERN CORP., and     :
GT OPERATING COMPANY, LLC,          :
                                    :
            Defendants.             :
- - - - - - - - - - - - - - - - - -:

15 Civ. 9705 (JCF)

MEMORANDUM
AND ORDER

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/17/17

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

This is a wage-and-hour case brought pursuant to the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 201 et seq. and New York Labor Law ("NYLL"). The plaintiffs have filed two unopposed motions. The first seeks class certification, approval of a class settlement, and approval of enhancement awards for specific plaintiffs. The second requests approval of attorneys' fees and expenses.[1]

Background

Uzzol Siddiky and Kawsar A. Maruf filed this action on December 11, 2015 against Gramercy Tavern, a New York City restaurant, alleging claims of minimum wage violations under the

_____

[1] The parties consented to my jurisdiction over all aspects of the case pursuant to 28 U.S.C. § 636(c).

FLSA and unlawful retention of employee gratuities in violation of NYLL § 196-d. (Complaint ("Compl."), ¶¶ 2-3, 17-31). The plaintiffs brought the case as a putative class and collective action on behalf of all service employees who worked at Gramercy Tavern between June 23, 2011, and September 15, 2016. (Compl., ¶¶ 4-5, 32-57). After the defendants consented to conditional certification of an FLSA collective action, notice was sent to putative members of the collective, and Syed A. Tahir, Andy Gomez, Luis Rosario, Hanuman Welch, and Diana Arnold opted in. (Declaration of Jeanne M. Christensen dated March 23, 2017, Docket no. 54 ("Christensen Decl."), ¶¶ 20-24).

The parties then engaged in targeted discovery that involved the production of more than 12,000 pages of documents. (Christensen Decl., ¶ 30). These included complete payroll and time records for the named plaintiffs and the opt-in plaintiffs; a sampling of payroll and time records and tip sheets for the class members; contracts, invoices, and receipts for private events over a four-year period; and lists of class members indicating their job titles, dates of employment, and hours worked per year. (Christensen Decl., ¶ 32).

On September 15, 2016, the parties attended a day-long mediation session with Carol A. Wittenberg, an experienced labor and employment mediator at JAMS Inc. (Christensen Decl., ¶ 25). At the conclusion of that process, they agreed to the framework

for a resolution of the action and executed a Memorandum of Understanding. (Christensen Decl., ¶¶ 25-26). Subsequently, the details of the agreement were memorialized in a Settlement Agreement and Release. (Christensen Decl., ¶ 26).

Settlement Terms

Pursuant to the terms of the settlement, the defendants agreed to create a Settlement Fund of $695,000.00. (Settlement Agreement and Release ("Settlement Agreement"), attached as Exh. 1 to Christensen Decl., §§ 2.26, 4.1(H)-(I)). The net amount of that fund after deducting attorneys' fees, costs, administrative fees, and enhancement awards, would then be allocated among class members based on a point system derived from the number of hours that they worked during the class period. (Settlement Agreement § 4.1(A)-(D)). Under the Settlement Agreement, plaintiffs' counsel could apply to the court for an award of attorneys' fees of up to $231,666.67, or one-third of the Settlement Fund, together with costs of up to $5,000.00. (Settlement Agreement, § 4.2). Similarly, the plaintiffs could seek enhancement awards of $7,000.00 for Mr. Siddiky; $6,000.00 each for Mr. Maruf and Mr. Tahir; and $1,000.00 each for Mr. Gomez, Mr. Rosario, Mr. Welch, and Ms. Arnold. (Settlement Agreement, § 4.1(G)). After payment of expenses and distribution of the net Settlement Fund to class members, any funds remaining as a result, for example, of unclaimed settlement checks, would be paid to City Harvest, a charitable

organization.  (Settlement Agreement, § 4.1(E)).

Discussion

   A. Class Certification

   The parties seek certification of a settlement class of all persons who worked as a tipped "captains," "servers," "bartenders," "bussers/backwaiters," "food runners," or "coffee runners" at Gramercy Tavern during the period from June 23, 2011, through September 15, 2016.  (Settlement Agreement, §§ 2.4, 2.23).

   In order to be certified, a proposed class must generally meet all of the standards of Rule 23(a) and then satisfy the requirements of one of the three categories in Rule 23(b).

   1. Rule 23(a)

   As set forth in Rule 23(a), the prerequisites for any class action are that:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

   a. Numerosity

   Numerosity is presumed where the proposed class includes more than 40 members.  Consolidated Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995); Shepard v. Rhea, No. 12 Civ. 7220, 2014 WL 5801415, at *4 (S.D.N.Y. Nov. 7, 2014).  Here, the numerosity requirement is satisfied because there are

4

approximately 220 class members. (Declaration of Abigail Schwartz dated March 22, 2017, attached as Exh. 6 to Christensen Decl., ¶ 7).

### b. Commonality

"[A]n issue is common to the class when it is susceptible to generalized, class-wide proof." In re Nassau County Strip Search Cases, 461 F.3d 219, 227 (2d Cir. 2006). Accordingly, a court must determine whether the class members' claims "will in fact depend on the answers to common questions," Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 356 (2011), and whether a class action is likely to "generate common answers apt to drive the resolution of the litigation," id. at 350 (emphasis omitted) (quoting Richard A. Nagarato, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 132 (2009)). In this case, there are plainly common issues concerning whether the defendants unlawfully applied a minimum wage tip credit by including ineligible employees in the tip pool and distributing gratuities to them.

### c. Typicality

"Typicality requires that the claims or defenses of the class representatives be typical of the claims and defenses of the class members. This requirement 'is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" Brown v. Kelly, 609 F.3d 467, 475 (2d Cir. 2010)

(internal citation omitted) (quoting <u>Marisol A. v. Giuliani</u>, 126 F.3d 372, 376 (2d Cir. 1997)). "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." <u>Robidoux v. Celani</u>, 987 F.2d 931, 936-37 (2d Cir. 1993). The claims of the named plaintiffs are typical of those of the class members in this action because the defendants applied the same wage and tip policies to all tipped employees.

### d. Adequacy of Representation

Finally, "adequacy of representation entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." <u>Baffa v. Donaldson, Lufkin & Jenrette Securities Corp.</u>, 222 F.3d 52, 60 (2d Cir. 2000). Here, the interests of the named plaintiffs and opt-in plaintiffs align with those of all class members. Furthermore, plaintiffs' counsel, Wigdor LLP ("Wigdor" or "Class Counsel"), have vast experience in litigating employment cases, including wage and hour claims.

### 2. Rule 23(b)

The plaintiffs here propose certification of a damages class under Rule 23(b)(3). Certification under Rule 23(b)(3) requires

that common questions "predominate over any questions affecting only individual members," and class resolution must be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In assessing the predominance and superiority of class treatment, courts must consider:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

## a. Predominance

"Predominance is satisfied 'if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'" Roach v. T.L. Cannon Corp., 778 F.3d 401, 405 (2d Cir. 2015) (quoting In re U.S. Foodservice Inc. Pricing Litigation, 729 F.3d 108, 118 (2d Cir. 2013)). Here, common issues predominate since the defendants' tip policies applied to all of the class members, and damages can be

assessed on the basis of a common formula and do not require individualized determinations.  See Hart v. Rick's Cabaret International, Inc., 60 F. Supp. 3d 447, 472-73 (S.D.N.Y. 2014).

b. Superiority

In wage and hour cases such as this, class actions are often superior for three very practical reasons.  First, "there is reason to believe that class members may lack familiarity with the legal system, discouraging them from pursuing individual claims." Jankowski v. Castaldi, No. 01 CV 164, 2006 WL 118973, at *4 (E.D.N.Y. Jan. 13, 2006) (quoting Velez v. Majik Cleaning Service, No. 03 Civ. 8698, 2005 WL 106895, at *5 (S.D.N.Y. Jan. 19, 2005)); accord Balverde v. Lunella Ristorante, Inc., No. 15 Civ. 5518, 2017 WL 1954934, at *9 (S.D.N.Y. May 10, 2017).  Second, many class members may still be employed by the defendants and therefore be reluctant to initiate individual litigation for fear of retaliation.  See Perez v. Isabella Geriatric Center, Inc., No. 13 Civ. 7453, 2016 WL 4618932, at *11 (S.D.N.Y. Sept. 1, 2016), adopted in part and rejected in part on other grounds, 2016 WL 5719802 (S.D.N.Y. Sept. 30, 2016); see also Schear v. Food Scope America, Inc., 297 F.R.D. 114, 126 (S.D.N.Y. 2014).  And, third, because the value of any individual claim may be small, it is not economically efficient to litigate each claim separately.  See Perez, 2016 WL 4618932, at *11; Schear, 297 F.R.D. at 126.  All of

these considerations indicate that a class action is superior in this case.

B. <u>Fairness</u>

Class action settlements must be approved by the court to ensure both procedural and substantive fairness. Fed. R. Civ. P. 23(e). To determine procedural fairness, courts assess the negotiation process that resulted in the settlement. <u>See</u> <u>Charron v. Weiner</u>, 731 F.3d 241, 247 (2d Cir. 2013); <u>Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.</u>, 396 F.3d 96, 116 (2d Cir. 2005); <u>D'Amato v. Deutsche Bank</u>, 236 F.3d 78, 85 (2d Cir. 2001). In assessing substantive fairness, courts utilize the nine factors set forth in <u>City of Detroit v. Grinnell Corp.</u>, 495 F.2d 448 (2d Cir. 1974), <u>abrogated on other grounds by</u> <u>Goldberger v. Integrated Resources, Inc.</u>, 209 F.3d 43 (2d Cir. 2000), to evaluate whether the settlement is fair, adequate, and reasonable. <u>See</u> <u>Charron</u>, 731 F.3d at 247; <u>Seijas v. Republic of Argentina</u>, Nos. 04 Civ. 400 <u>et al.</u>, 2017 WL 1511352, at *6 (S.D.N.Y. April 27, 2017). Furthermore, a judicial determination that a settlement is fair and reasonable is required in any FLSA case, whether brought on a class or individual basis. <u>Cheeks v. Freeport Pancake House, Inc.</u>, 796 F.3d 199, 203-04, 206 (2d Cir. 2015).

1. <u>Procedural Fairness</u>

A presumption of procedural fairness applies to a proposed class settlement where that settlement is "reached in arm's-length

negotiations between experienced, capable counsel after meaningful discovery." McReynolds v. Richards-Cantave, 588 F.3d 790, 803 (2d Cir. 2009) (quoting Wal–Mart Stores, 396 F.3d at 116); accord Charron, 741 F.3d at 247. Here, counsel are highly experienced both in wage and hour cases and in complex litigation. As discussed above, they engaged in targeted discovery in connection with their negotiations. And those negotiations were conducted before a respected mediator. See Romero v. La Revise Associates, L.L.C., 58 F. Supp. 3d 411, 420 (S.D.N.Y. 2014) (applying presumption of procedural fairness where mediation took place with experienced mediator). Accordingly, the settlement was reached on the basis of fair procedures.[2]

## 2. Substantive Fairness

In Grinnell, the Second Circuit identified nine factors to be considered in assessing the substantive fairness of a settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to

---

[2] A further procedural requirement is that the notice of the settlement be provided to the appropriate state and federal officials at least ninety days prior to final approval pursuant to the Class Action Fairness Act ("CAFA"). 28 U.S.C. § 1715(b), (d); Perez v. Jupada Enterprises, Inc., No. 10 Civ. 3118, 2012 WL 3042928, at *1-2 (S.D.N.Y. July 25, 2012) (holding that requirements of CAFA apply to FLSA class settlements). Here, the parties have certified that this requirement has been satisfied. (Declaration of Jason B. Jendrewski dated April 24, 2017, ¶ 3).

withstand a greater judgment; (8) the range of
reasonableness of the settlement fund in light of the
best possible recovery; [and] (9) the range of
reasonableness of the settlement fund to a possible
recovery in light of all the attendant risks of
litigation.

495 F.2d at 463 (internal citations omitted).  I will address each

in turn.

### a. <u>Complexity of the Litigation</u>

It would be expensive and time-consuming to take this case to

trial.  "As courts recognize, most 'class actions are inherently

complex and settlement avoids the costs, delays and multitude of

other problems associated with them.' <u>Guippone v. BH S&B Holdings,</u>

<u>LLC</u>, No. 09 Civ. 1029, 2016 WL 5811888, at *5 (S.D.N.Y. Sept. 23,

2016) (quoting <u>Johnson v. Brennan</u>, No. 10 Civ. 4712, 2011 WL

4357376, at *8 (S.D.N.Y. Sept. 16, 2011)).  Here, the plaintiffs

would still have to move for class certification, a motion the

defendants would oppose.  If the motion were granted, the parties

would engage in full-blown discovery with respect to 220 class

members.  Following discovery, the parties would likely file

summary judgment motions, and unless those motions fully disposed

of all issues, the parties would proceed to trial. There, not only

would liability be contested, but the parties would submit evidence

with respect to each individual class member.  The settlement

avoids these tasks and provides relief to the class quickly,

efficiently, and without further risk.  The first <u>Grinnell</u> factor therefore favors approval.

### b. <u>Reaction to the Settlement</u>

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." <u>Babcock v. C. Tech Collections, Inc.</u>, Nos. 14 CV 3124, 14 CV 3576, 2017 WL 1155767, at *6 (E.D.N.Y. March 27, 2017) (quoting <u>Maley v. Del Global Technology Corp.</u>, 186 F. Supp. 2d 358, 362-63 (S.D.N.Y. 2002); <u>accord</u> <u>Pennsylvania Public School Employees' Retirement System v. Bank of America Corp.</u>, 318 F.R.D. 19, 24 (S.D.N.Y. 2016).  The class members in this case were fully apprised of the terms of the settlement.  None objected, and only one opted out.  The reaction of the class was thus markedly positive.

### c. <u>Discovery</u>

As described above, although formal discovery was not completed, the parties exchanged targeted documentation in connection with mediation.  This was an efficient means of ensuring that counsel had sufficient information to evaluate the risks and potential rewards of litigation.  This factor, as well, therefore favors approval.

### d. <u>Risks of Establishing Liability and Damages</u>

"[I]f settlement has any purpose at all, it is to avoid a trial on the merits because of uncertainty of the outcome." <u>Azogue</u>

v. 16 for 8 Hospitality LLC, No. 13 Civ. 7899, 2016 WL 4411422, at
*5 (S.D.N.Y. Aug. 19, 2016) (quoting In re Ira Haupt & Co., 304 F.
Supp. 917, 934 (S.D.N.Y. 1969)).  Here, the settlement is
advantageous to the plaintiffs because it avoids substantial risks
involved in proving liability.  For example, there is a significant
possibility that a court would find that the administrative fee
collected for private events was not a gratuity and therefore was
not required to be distributed to the plaintiff employees.  Second,
a court could determine that polishers and expediters were tip-
eligible, such that their participation in the tip pool did not
violate the plaintiffs' rights.  Furthermore, even if the tip pool
was diluted by the participation of tip-ineligible employees,
there is precedent to the effect that, while this would constitute
an FLSA minimum wage violation, it would not violate the NYLL as
long as class members received the minimum wage.  See Murphy v.
Lajaunie, No. 13 Civ. 6503, 2016 WL 1192689, at *4-6 (S.D.N.Y.
March 21, 2016); Schear, 297 F.R.D. at 133; but see Maldonado v.
BTB Events & Celebrations, Inc., 990 F. Supp. 2d 382, 387 (S.D.N.Y.
2013); Copantitla v. Fiskardo Estiatorio, Inc., 788 F. Supp. 2d
253, 290 (S.D.N.Y. 2011).  Such a holding would have a devastating
effect upon class members who had not opted into the FLSA
collective here, since they would be left entirely without relief
for minimum wage claims in this action.  See Damassia v. Duane
Reade, Inc., 250 F.R.D. 152, 161 (S.D.N.Y. 2008) (holding that

class and collective actions "'are mutually exclusive,' so suits seeking relief under the FLSA may proceed only through a collective action, and not a class action" (quoting Lachapelle v. Owens-Illinois, Inc., 513 F.2d 286, 289 (5th Cir. 1975))).

### e. Risk of Maintaining a Class

The plaintiffs also face uncertainty with respect to their ability to maintain a class through trial. Because the class contains employees in a variety of jobs, there is a risk that the plaintiffs would ultimately be unable to demonstrate commonality. Furthermore, since each class member would be entitled to individualized damages, the defendants could challenge certification under Rule 23(b)(3).

### f. The Defendants' Ability to Pay

The parties have not produced information showing that the defendants would be unable to pay a judgment greater than the amount of the settlement. This factor therefore does not favor approval. Nevertheless, the "defendants' ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." In re Austrian and German Bank Holocaust Litigation, 80 F. Supp. 2d 164, 178 n. 9 (S.D.N.Y. 2000); accord Viafara v. MCIZ Corp., No. 12 Civ. 7452, 2014 WL 1777438, at *7 (S.D.N.Y. May 1, 2014); Frank v. Eastman Kodak Co., 228 F.R.D. 174, 186 (W.D.N.Y. 2005).

## g. Reasonableness of the Settlement

"[T]he value of a settlement to the settling plaintiffs is the most important factor in the court's decision to approve or disapprove a settlement." 4 William B. Rubenstein, Newberg on Class Actions § 13:49 (5th ed.) (footnote omitted). That value, of course, must be judged in relation to the optimal recovery that the plaintiffs could receive at trial, discounted by the risks specific to their claims. See Mars Steel Corp. v. Continental Illinois Bank & Trust Co., 834 F.2d 677, 682 (7th Cir. 1987) ("A settlement is fair to the plaintiffs in a substantive sense . . . if it gives them the expected value of their claim if it went to trial, net of the costs of trial (minus the costs of settlement, but we can disregard that detail).").

Here, Class Counsel estimate a fifty percent chance of complete success on their minimum wage claims, which results in a value of approximately $900,000 for those claims. (Christensen Decl., ¶ 87). That figure includes liquidated as well as compensatory damages. (Tr. at 5-6).[3] Similarly, counsel discount their claims for disgorgement under NYLL § 196-d by fifty percent, bringing the value of this claim to $600,000. (Christensen Decl., ¶ 87). Class Counsel do not include in their calculations any value for their claim that service charges for private events

---

[3] "Tr." refers to the transcript of the hearing on final approval of the settlement held on April 6, 2017.

constituted gratuities, having evaluated the strength of the defendants' arguments on this issue. (Christensen Decl., ¶ 88). Thus, the value of the settlement -- $695,000 -- is approximately forty-six percent of $1.5 million, which is what Class Counsel estimate to be the total value of both claims. But they have already discounted each viable claim by one-half, so the settlement value is more accurately characterized as about twenty-three percent of the maximum possible recovery of $3,000,000.

"[T]here is 'a range of reasonableness with respect to a settlement,' and the settlement amount's ratio to the maximum potential recovery need not be the sole, or even the dominant, consideration when assessing the settlement's fairness." In re Global Crossing Securities and ERISA Litigation, 225 F.R.D. 436, 460 (S.D.N.Y. 2004) (internal citation omitted) (quoting Newman v. Stein, 464 F.2d 689, 693 (2d Cir. 1972)). Indeed, "the fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." Grinnell, 495 F.2d at 455 (footnote omitted). In any event, the settlement here falls comfortably within the range for class settlements approved in this district. See Trinidad v. Pret a Manger (USA) Ltd., No. 12 Civ. 6094, 2014 WL 4670870, at *7 (S.D.N.Y. Sept. 19, 2014) (approving FLSA class settlement of 20-25% of maximum recovery); Athale v. Sinotech Energy Ltd., No. 11

Civ. 5831, 2013 WL 11310686, at *6-7 (S.D.N.Y. Sept. 4, 2013)
(approving class settlement of 13% of maximum recovery calculated
by plaintiffs' expert); In re Citigroup Inc. Bond Litigation, 296
F.R.D. 147, 157 (S.D.N.Y. 2013) (approving class settlement of
approximately 24% of maximum recovery); In re IMAX Securities
Litigation, 283 F.R.D. 178, 191 (S.D.N.Y. 2012) (approving class
settlement of 13% of maximum recovery); In re Giant Interactive
Group, Inc. Securities Litigation, 279 F.R.D. 151, 162 (S.D.N.Y.
2011) (approving class settlement of 16.5% of maximum provable
damages). For the reasons articulated above, the plaintiffs would
face significant risks if they were to proceed to trial. Yet, by
settling, they receive substantial sums, estimated at
approximately $2,000 on average for each class member. (Tr. at
13). After payment of attorneys' fees, litigation expenses, and
administration costs, all of the settlement fund would be paid out
to class members, and none of it would revert to the defendants.
(Tr. at 13). The terms of the settlement, therefore, including
its magnitude and the allocation of payments based on the number
of hours worked by each class member, are reasonable.

    3. FLSA Approval

"[T]he FLSA is a uniquely protective statute." Cheeks, 796
F.3d at 207. Accordingly, in addition to the factors that govern
approval of any class action settlement, a court evaluating the
settlement of an FLSA action must take into account other

17

considerations, including any confidentiality requirements, the scope of any release, and any provision for attorneys' fees.  Id. at 206.

The policies underlying the FLSA preclude confidentiality provisions in an FLSA settlement.

> Among the people who require the protection of the FLSA are workers who are poorly educated and non-English speaking.  Some of these workers may have an understandable aversion to courthouses and lawyers.  At the same time, such persons are especially vulnerable to workplace exploitation and have much to gain from the diffusion of information about their employment rights. A non-disclosure provision blocks such information.

Lopez v. Nights of Cabiria, LLC, 96 F. Supp. 3d 170, 179 (S.D.N.Y. 2015) (footnotes omitted).  Thus, "[b]arring the plaintiffs from speaking about their experience would 'further[] resolution of no bona fide dispute between the parties,' but rather 'thwart[] Congress's intent to ensure widespread compliance with the statute . . . by silencing the employee who has vindicated a disputed FLSA right.'"  Id. (alterations in original) (quoting Dees v. Hydadry, Inc., 706 F. Supp. 2d 1227, 1242 (M.D. Fla. 2010)).

In this case, the Settlement Agreement originally contained a provision limiting the plaintiffs' communications. Specifically, it provided in relevant part, that

> Plaintiffs, Class Counsel, Defendants, and Defense Counsel agree that they will not issue, send, or post, or cause to be issued, sent, or posted, any press release, posting, e-mail, or other verbal or written communication to any electronic, print, or digital media, blog, or social networking site (including, but

> not limited to, Facebook, LinkedIn, Instagram, and
> Twitter) regarding the Parties' settlement discussions
> and/or the facts and events leading up to the settlement.
> If specifically asked about the status of the Litigation
> or this Agreement, Plaintiffs, Class Counsel,
> Defendants, and Defense Counsel agree that they will
> respond solely by stating that the Parties' dispute has
> been amicably resolved.

(Settlement Agreement, § 5.4). Although this provision did not muzzle absent class members, it did prevent the named plaintiffs and the opt-in plaintiffs from discussing the settlement. (Tr. at 15). However, at my urging (Tr. at 14-16), the parties modified the agreement, and it now limits only the communications of counsel; the parties, including opt-in plaintiffs, are free to discuss the terms of the settlement. (Rider to Settlement Agreement and Release, attached as exhibit to Letter of Jason D. Jendrewski dated April 11, 2017). Thus, there is no confidentiality impediment to approval of the settlement.

Nor does the Settlement Agreement contain an overbroad release. Courts will reject FLSA settlements that contain "an overbroad release that would 'waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues.'" Cheeks, 796 F.3d at 206 (quoting Nights of Cabiria, 96 F. Supp. 3d at 181). With respect to absent class members, the Settlement Agreement releases the defendants only for wage and hour claims that accrued prior to September 15, 2016, the date of the

successful mediation. (Settlement Agreement, § 5.1(A)). By contrast, the named plaintiffs and opt-in plaintiffs release any and all claims, whether related to wage and hour issues or otherwise. (Settlement Agreement, § 5.1(D)). This is appropriate for two reasons. First, unlike the absent class members, these plaintiffs have had the advice of class counsel and can waive their rights knowingly. Second, they are receiving enhancement payments under the Settlement Agreement that constitute consideration for this broader release.

Finally, the fairness of the settlement is not affected by the provision for attorneys' fees. The Settlement Agreement does not establish the fees which Class Counsel will receive. Rather, it sets a limit on the amount that they may seek by application to the court. It is therefore within the discretion of the court to reallocate funds between the class and Class Counsel if that is necessary to assure a fair outcome. See Trinidad, 2014 WL 4670870, at *8 (approving FLSA class settlement after reallocating portion of attorneys' fees and enhancement awards to class settlement fund).

C. Enhancement Awards

Mr. Siddiky and Mr. Maruf assisted Class Counsel in preparation of the Complaint. (Christensen Decl., ¶ 91). They, together with Mr. Tahir, provided information and documents, met with Class Counsel, communicated with other class members,

assisted counsel in preparing for settlement negotiations, and attended the mediation session. (Christensen Decl., ¶ 91). These services merit the enhancement awards requested: $7,000 for Mr. Siddiky and $6,000 each for Mr. Maruf and Mr. Tahir. See Waggoner v. U.S. Bancorp, No. 15-cv-1626, 2016 WL 7474408, at *2, 4 (N.D. Ohio Dec. 29, 2016) (approving $10,000 enhancement in FLSA settlement); Toure v. Amerigroup Corp., No. 10 CV 5391, 2012 WL 3240461, at *6 (E.D.N.Y. Aug. 6, 2012) (approving settlement in FLSA action including $10,000 enhancement awards for named plaintiffs and $5,000 awards for opt-in plaintiffs).

It would be anomalous to grant enhancement awards to opt-in plaintiffs who do no more than "raise their hands" in response to notice of a collective action. However, in this case, Mr. Gomez, Mr. Rosario, Mr. Welch, and Ms. Arnold all did more than that. They met with counsel and provided information and documents. (Christensen Decl., ¶ 91; Tr. at 6-8). Furthermore, like the named plaintiffs, they exposed themselves to possible retaliation for their public participation in the case. See Asare v. Change Group New York, Inc., No. 12 Civ. 3371, 2013 WL 6144764, at *15 (S.D.N.Y. Nov. 18, 2013) (approving enhancement awards in FLSA settlement and noting, "In the employment context, where workers are often blacklisted if they are considered trouble makers, class representatives are vulnerable to retaliation. Even where there is no record of retaliation, class representatives merit

recognition for assuming such risk." (internal citation omitted)).

Therefore, modest enhancement awards of $1,000 each are appropriate. <u>See</u> <u>Zeltser v. Merrill Lynch & Co.</u>, No. 13 Civ. 1531, 2014 WL 4816134, at *11 (approving enhancement awards of $4,000 for opt-in plaintiffs in FLSA settlement); <u>Silverstein v. AllianceBernstein, L.P.</u>, No. 09 Civ. 5904, 2013 WL 7122612, at *10 (S.D.N.Y. Dec. 20, 2013) (approving enhancement awards of $1,500 for opt-in plaintiffs in FLSA settlement); <u>Aponte v. Comprehensive Health Management, Inc.</u>, No. 10 Civ. 4825, 2013 WL 1364147, at *7 (S.D.N.Y. April 2, 2013) (approving enhancement awards of $500 to opt-in plaintiffs in FLSA settlement).

    D. <u>Attorneys' Fees and Costs</u>

Class Counsel seek attorneys' fees of $231,666.67, representing one-third of the total settlement of $695,000.00. (Settlement Agreement, § 4.2; Christensen Decl., ¶¶ 111, 113). Counsel's retainers with the named plaintiffs provide for contingency fees of one-third of any recovery. (Christensen Decl., Exh. 10). Awarding attorneys' fees on a percentage basis is favored in class actions.

> Courts in the Second Circuit tend to grant class counsel
> a percentage of any settlement, rather than utilize the
> "lodestar method" (multiplying the hours reasonably
> expended by a reasonable hourly rate), because the
> percentage method aligns the interests of the class and
> its counsel and provides a powerful incentive for the
> efficient prosecution and early resolution of
> litigation. The lodestar method, on the other hand,
> disincentivizes early settlements, tempts lawyers to run

up their hours, and "compels district courts to engage in a gimlet-eyed review of line-item fee audits." Id. Raniere v. Citigroup Inc., 310 F.R.D. 211, 220 (S.D.N.Y. 2015) (internal citation omitted) (quoting Wal-Mart, 396 F.3d at 121); see also Velez v. Novartis Pharmaceuticals Corp., No. 04 Civ. 9194, 2010 WL 4877852, at *21 (S.D.N.Y. Nov. 30, 2010) ("[T]he Second Circuit favors awarding fees according to the 'percentage-of-the-fund' over the 'lodestar' method in common fund cases."). To determine whether a fee is reasonable, courts look to the factors identified by the Second Circuit in Goldberger, 209 F.3d at 50. See Wal-Mart, 396 F.3d at 121; Raniere, 310 F.R.D. at 220. Those factors are (1) the time and labor expended by counsel, (2) the magnitude and complexities of the litigation, (3) the risk of the litigation, (4) the quality of the representation, (5) the requested fee in relation to the settlement, and (6) public policy considerations. Goldberger, 209 F.3d at 50.

## 1. Class Counsel's Time and Labor

As in Raniere, the first Goldberger factor cuts both ways in this case. On one hand, "while class counsel [have] prosecuted this case vigorously, this settlement comes at a fairly early stage of the litigation." Raniere, 310 F.R.D. at 221. Consequently, "[t]he parties have not engaged in full discovery, drafted summary judgment briefing, or come remotely close to trial." Id. On the other hand, counsel have undoubtedly devoted substantial effort to

23

organizing the class action, taking targeted discovery, and engineering a favorable settlement. See id. One measure of that effort may be Class Counsel's lodestar, which is also utilized to cross-check any percentage award. See Wal-Mart, 396 F.3d at 123; Goldberger, 209 F.3d at 50. According to Class Counsel, they expended slightly more than 350 hours of time, at rates ranging from $180 per hour for paralegal work to $750 per hour for the work of a partner, for a total lodestar of $142,905.00. (Christensen Decl., ¶ 112 & Exh. 8). Thus, the fee award they seek is a multiplier of 1.62 of the lodestar. (Christensen Decl., ¶ 113).

Unfortunately, the lodestar is of little assistance in evaluating Wigdor's application in this case. First, Class Counsel have not submitted time records that would allow me to assess the work performed. Instead, they have provided only the total number of hours recorded by each attorney. (Christensen Decl., Exh. 8). To be sure, in a percentage-of-the-fund case, the hours "need not be exhaustively scrutinized." Goldberger, 209 F.3d at 50. But some detail with respect to the number of hours devoted to each type of task is necessary for the court to evaluate the effort of counsel.

Second, "[t]here is little consensus in this district on the appropriate range for lodestar multipliers." Fujiwara v. Sushi Yasuda Ltd., 58 F. Supp. 3d 424, 438 (S.D.N.Y. 2014).

One court found that "[i]n recent years multipliers of between 3 and 4.5 have become common" and described 2.09 as "at the lower end of the range of multipliers awarded by courts within the Second Circuit." In re Lloyd's American Trust Fund Litigation, No. 96 Civ. 1262, 2002 WL 31663577, at *27 (S.D.N.Y. Nov. 26, 2002); see also Maley v. Del Global Technologies Corp., 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (finding multiplier of 4.65 "well within the range awarded by courts in this Circuit and courts throughout the country"). This Court has held that "[a]s a rule, post-Goldberger courts . . . have generally refused multipliers as high as 2.03." In re Currency Conversion, 263 F.R.D. at 129 (quoting In re Merrill Lynch & Co. Research Report Securities Litigation, No. 02 MDL 1484, 2007 WL 4526593, at *21 (S.D.N.Y. Dec. 20, 2007)); see also Tiro v. Public House Investments, LLC, Nos. 11 Civ. 7679, 11 Civ. 8249, 2013 WL 4830949, at *15 (S.D.N.Y. Sept. 10, 2013) (awarding multiplier of 1 and noting "[t]his court is not one that routinely authorizes settlements at six, seven and eight times lodestar . . . . [I]f the lodestar is significantly out of line with the percentage of recovery it raises a red flag."); Silverstein v. AllianceBernstein, L.P., No. 09 Civ. 5904, 2013 WL 7122612 (S.D.N.Y. Dec. 20, 2013) (awarding one-third of settlement fund with no multiplier in wage class action). And several courts have awarded only a fraction of the lodestar amount (confusingly referred to as a "negative lodestar") when the lodestar is a high proportion of the settlement fund. See, e.g., Fears v. Wilhelmina Model Agency, No. 02 Civ. 4911, 2009 WL 2958396, at *8 (S.D.N.Y. Sept. 16, 2009); In re NTL, Inc. Securities Litigation, No. 02 Civ. 3013, 2007 WL 623808, at *8 (S.D.N.Y. March 1, 2007); Beane v. Bank of N.Y. Mellon, No. 07 Civ. 9444, 2009 WL 874046, at *8 (S.D.N.Y. March 31, 2009); Silberblatt v. Morgan Stanley, 524 F. Supp. 2d 425, 434 (S.D.N.Y. 2007).

Id. (alterations in original). In Fujiwara, the court concluded that "[t]he lodestar is worthless as a 'cross check' on the percentage recovery method when there is so little agreement as to what constitutes a reasonable multiplier." Id.

Even if there were consensus with respect to a reasonable range of multipliers, the value of the lodestar as a measuring stick is limited by the difficulty of ascertaining appropriate billing rates in a case such as this. In the typical fee-shifting case, a court seeks "to use the approximate market rate for an attorney's services in calculating the presumptively reasonable fee." Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany, 522 F.3d 182, 192 (2d Cir. 2008). According to the Second Circuit, "by focusing on the hourly rate at which a client who wished to pay no more than necessary would be willing to compensate his attorney, the district court can enforce market discipline, approximating the negotiation that might ensue were the client actually required to pay the attorney's fees." Id. Yet this free enterprise model breaks down in circumstances where there is not a robust market for the type of legal services at issue.

In this case, Wigdor seeks fees at the rates of $750 per hour for Jeanne M. Christensen, a partner; $450 per hour for Tanvir Rahman, a senior associate; $390 per hour for Elizabeth Chen, an associate; and $180 per hour for paralegals. (Christensen Decl., ¶ 102 & Exh. 8). Class Counsel represent that this is a discount from the rates that they regularly charge hourly paying clients. (Christensen Decl., ¶ 102). But they also candidly acknowledge that these are not market rates paid by plaintiffs in wage and

hour cases: "these are clients that generally are earning at most $20 an hour, so they could never pay that." (Tr. at 10). Instead, attorneys in these cases are virtually always retained on a contingency basis, and there is no discernable hourly rate. While the Wigdor attorneys may indeed bill at the requested rates in some practice areas, "factors may justify compensating an attorney at a rate lower than his or her customary rate for a different type of practice." Arbor Hill, 522 F.3d at 184 n.2.

Class Counsel nevertheless cite a number of FLSA cases in which they have been awarded fees based, at least in part, on rates similar to those they seek here. See, e.g., Raniere, 310 F.R.D. at 221; Asare, 2013 WL 6144764, at *19. These cases, however, are of little assistance. For instance, Raniere does not analyze whether the requested rates were reflective of the market, and it notes that fee request did not seek a multiplier over the lodestar. 310 F.3d at 221. Similarly, in Asare, the court approved Wigdor's requested rates by comparison to rates approved in securities cases, not in wage and hour actions. 2013 WL 6144764, at *19. And there, counsel sought a fee representing less than twenty-five percent of the settlement fund. Id. at *16.

As the court noted in Fujiwara, "Courts in this District have determined in recent cases that a fee ranging from $250 to $450 is appropriate for experienced litigators in wage-and-hour cases." 58 F. Supp. 3d at 437 (quoting Yuquilema v. Manhattan's Hero Corp.,

No. 13 Civ. 461, 2014 WL 4207106, at *14 (S.D.N.Y. Aug. 20, 2014)).
Similarly, in a quite recent case, the court observed that
"[a]lthough courts in this district have occasionally awarded
hourly rates of $550 and $600 to experienced senior litigators,
FLSA litigators are rarely awarded over $450 per hour." Manley v.
Midan Restaurant, Inc., No. 14 Civ. 1693, 2017 WL 1155916, at *11
(S.D.N.Y. March 27, 2017).  Yet even this precedent is suspect in
the sense that it appears to be based only on prior cases, none of
which determine what a client would be willing to pay for
representation in the same type of case.

Counsel should not be penalized for taking a case on a
contingency basis in circumstances where it is not possible to
charge hourly rates.  At the same time, they should not receive an
unwarranted windfall on the basis of rates that bear no relation
to a market for their services.  In this situation, the lodestar
necessarily has diminished utility, and greater reliance must be
placed on other relevant factors.

2. Magnitude and Complexity of the Litigation

This action is moderately large and complex.  As noted, it
involves a class of approximately 220 individuals in several
different job titles.  It comprises claims both of minimum wage
violations and of the unlawful withholding of gratuities.

### 3. Litigation Risk

As discussed above in connection with approval of the Settlement Approval, this action involved risk with respect to proving both liability and damages. Furthermore, the plaintiffs' ability to maintain it as a class action was uncertain. Class Counsel are entitled to reasonable compensation precisely because of their willingness to provide representation despite these risks.

### 4. Quality of Representation

"To determine the 'quality of the representation,' courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." <u>Manley</u>, 17 WL 1155916, at *9 (quoting <u>Taft v. Ackermans</u>, 02 Civ. 7951, 2007 WL 414493, at *10 (S.D.N.Y. Jan. 31, 2007)). Here, Class Counsel are highly experienced in employment cases generally and in wage and hour cases in particular, <u>see</u> <u>Raniere</u>, 310 F.R.D. at 221 ("Class counsel [are] well-regarded in this District as skillful and effective class-action advocates."), and they engineered a settlement quite favorable to the class.

### 5. Relation of the Fee to the Settlement

"Courts also consider the size of the settlement to ensure that the percentage award does not constitute a 'windfall.'" <u>Asare</u>, 2013 WL 6144764, at *21. In <u>Raniere</u>, the court approved the requested fee but noted that "the proposed one-third fee is

quite high in relation to the settlement," which was for a total of $4,650,000.  360 F.R.D. at 221.  In Asare, in connection with a settlement for $165,765, the court approved a fee of slightly less than 25%, observing that "[c]ourts in this Circuit have routinely granted requests of approximately one-quarter to one-third of the fund in cases with settlement funds substantially larger than this one."  2013 WL 6144764 at *21.  In Fujiwara, the court reduced the fee award to 20% of the settlement fund of $2.4 million.  58 F. Supp. 3d at 431, 439.

In light of the settlement of $695,000 here and each of the factors discussed above, a fee award of 25% of the settlement, which equals $173,750, is fair and reasonable.  For 350 hours of work, this equates to a blended hourly rate of almost $500 for each attorney and paralegal.  From a different perspective, it represents a multiplier of approximately 1.2 over the lodestar of $142,905, as calculated by Class Counsel.  (Christensen Decl., Exh. 8).

### 6. Public Policy Considerations

Public policy supports a fee award in this range.  "The FLSA and NYLL are remedial statutes designed to protect the wages of workers. Fair compensation for attorneys who prosecute those rights by taking on such litigation furthers the remedial purpose of those statutes."  Asare, 2013 WL 6144764 at *22.  While a one-third contingency may well be necessary to attract counsel to take

30

on an individual wage and hour case with a limited potential recovery, an award of twenty-five percent of an almost $700,000 class settlement is ample incentive for attorneys to provide representation in similar cases.

### 7. Expenses

Class counsel request reimbursement of $2,143.45 for expenses including the filing fee, copying, postage, and meals. (Christensen Decl., Exh. 9). These expenses were necessary and were directly related to the results achieved. See Asare, 2013 WL 6144764 at *22. They are therefore approved.

### Conclusion

For the reasons discussed above, plaintiffs' motion for settlement approval (Docket no. 50) is granted, and their applications for enhancement payments of $7,000.00 for Mr. Siddiky; $6,000.00 each for Mr. Maruf and Mr. Tahir; and $1,000.00 each for Mr. Gomez, Mr. Rosario, Mr. Welch, and Ms. Arnold are granted. Plaintiff's motion for approval of attorneys' fees and expenses to class counsel (Docket no. 52) is granted to the extent that fees of $173,750.00 and expenses of $2,143.45 are approved. The Clerk of Court is respectfully directed to close this action.

SO ORDERED.

_James C. Francis IV_
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
     May 17, 2017

Copies transmitted this date:

Jeanne-Marie B. Christensen, Esq.
Elizabeth J. Chen, Esq.
Tanvir H. Rahman, Esq.
Wigdor LLP
85 Fifth Ave., 5th Floor
New York, NY 10003

Carolyn D. Richmond, Esq.
Glenn S. Grindlinger, Esq.
Gregg M. Kligman, Esq.
Jason B. Jendrewski, Esq.
Fox Rothschild, LLP
250 Park Ave., Suite 1500
New York, NY 10017